IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:11-CV-00068-RLV
(5:05-CR-00009-RLV-DCK-3)

SHONIKA GAIL ECKLES,                    )
                                        )
              Petitioner,               )
                                        )
       v.                               )              **ORDER**
                                        )
UNITED STATES OF AMERICA,               )
                                        )
              Respondent.               )
_____ )

**THIS MATTER** is before the Court on Respondent's motion for summary judgment on

the claims raised by Petitioner in her pro se motion to vacate, set aside or correct sentence, which

was filed pursuant 28 U.S.C. § 2255. For the reasons stated herein, the Court finds that

Respondent's motion for summary judgment should be granted and Petitioner's § 2255 motion

will be denied and dismissed.

## I.       BACKGROUND

Petitioner and thirty-six co-defendants were charged in a second superseding bill of

indictment with multiple counts related to a wide-ranging drug conspiracy by the grand jury in

this district. In Count One, Petitioner was charged with conspiracy to possess with intent to

distribute 50 grams or more of cocaine base, 5 kilograms or more of cocaine, and 1000 kilograms

or more of marijuana, all in violation 21 U.S.C. § 846. In Count Three, Petitioner was named as

the lone defendant and charged with possession of cocaine with intent to distribute, in violation

of 21 U.S.C. § 841. In Count Twenty-Seven, Petitioner was charged with the offense of

possession with intent to distribute more than 5 grams of cocaine base. (5:05-CR-00009, Doc.

No. 265: Second Superseding Indictment (hereinafter, "the indictment").

Petitioner elected to plead not guilty and proceeded to a jury trial with co-defendant Darlene Eckles. The Government presented evidence through numerous witnesses at trial regarding a five-year conspiracy to distribute drugs in and around Iredell County, North Carolina, which involved three dozen individuals and large quantities of cocaine base, cocaine, and marijuana. Many of the witnesses who testified had been named in the same indictment as Petitioner and had chosen to plead guilty, likely hoping to obtain a more lenient sentence. The testimony demonstrated that Petitioner had a large role in the distribution of cocaine, cocaine base, and marijuana. In fact the evidence showed that the drug conspiracy was a family affair that included the participation of her uncle Rickie Eckles, her aunt Darlene Eckles and her mother Marlene Eckles. Petitioner's role in the conspiracy grew as she began selling and delivering drugs for Rickie Eckles. She eventually branched out and secured her own supplier, Anthony Hallman, and she established a large customer base of her own.

Petitioner was convicted following a four-day trial on each of the three counts in her indictment and the jury specifically found that she was responsible for the drug amounts alleged in the indictment in Counts One and Twenty-Seven. (Id., Doc. No. 509: Jury Verdict). A presentence report (PSR) was prepared in advance of Petitioner's sentencing hearing. Petitioner's counsel objected to the probation officer's determination that she began her involvement in the drug conspiracy in 2000 while she was on probation for a state conviction, contending instead that she did not become involved until 2003. (Id., Doc. No. 723 at 25). The probation officer disagreed based on the evidence of record and recommended that two criminal history points should be applied under § 4A1.1(d) of the United States Sentencing Guidelines

2

Manual (USSG). Petitioner also filed objections to some of the statements made by witnesses and a co-defendant. In particular, Petitioner objected to statements attributed to Deleon Dalton and Okiera Myer concerning drug transactions that occurred between Dalton and Myer and Petitioner. The probation officer, again citing the evidence of record and conversations with the case agent, recommended no change. (Id. at 25-26).

Petitioner's counsel also submitted an argument to the probation officer in support of a variance renewing his argument that Petitioner had not entered into the conspiracy until 2003, and therefore the two criminal history points for participation in the conspiracy in 2000 while on probation was improper. However, in the event the two-level offense was found to apply, counsel argued that the Court should find that her criminal history category significantly overrepresented the seriousness of her prior crimes and find that she should be found at a Level II criminal history category. (Id. at 26). The PSR calculated a guideline range of 292 to 365 months' imprisonment based on a total offense level of 38 and a criminal history category of III, but noted with a Level II criminal history the guideline range would be reduced to 262 to 327 months in prison. (Id. at 27).

Petitioner appeared with counsel for her sentencing hearing and acknowledged that she had reviewed the contents of the PSR with her attorney, and counsel then began to address the objections to the PSR. The Government called the case agent, Detective David Ramsey, to testify regarding the length of time Petitioner participated in the conspiracy. Following this presentation of evidence the Court found that the objection to the two criminal history points under USSG § 4A1.1(d) should be sustained because there was insufficient evidence of her involvement in 2000, and thus no preponderance of the evidence to support an enhancement for participation in

3

the conspiracy during that time and while on probation. The Court therefore found that the correct guideline range was 262 months to 327 months' imprisonment based on a Level II criminal history category and a total offense level of 38. In seeking a below-guideline sentence, Petitioner's counsel addressed the crack to powder ratio disparity and asked that the Court take that into consideration when deciding whether or not to depart below the guidelines. (Id., Doc. No. 814: Sentencing Tr.).[1]

After hearing from Petitioner and the Government, the Court found that the low-end guideline term of 262 months should be imposed on Counts One and Twenty-Seven and a term of 240-months on Count Three with all terms to be served concurrently. (Id., Doc. No. 703: Judgment in a Criminal Case). Petitioner filed a timely notice of appeal to the United States Court of Appeals for the Fourth Circuit. On appeal, her counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), contending that there were no meritorious issues for appeal, however he questioned whether the evidence was sufficient to support the jury's verdict and whether her sentence was reasonable. Petitioner was informed of her right to file a supplemental brief but she declined to do so.

The Court rejected counsel's first contention and concluded that the trial testimony provided substantial evidence of Petitioner's guilt. The Court next considered whether Petitioner's sentence was reasonable and noted that while her direct appeal was pending the Supreme Court decided Kimbrough v. United States, 552 U.S. 85 (2007), in which the Court held "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to

---

[1] All referenced page numbers are to the numbers contained in the bottom footer of the ECF documents filed in this case.

4

achieve § 3553(a)'s purposes, even in a mine-run case" <u>United States v. Eckles</u>, 339 F. App'x 311, 312 (4th Cir. 2009) (unpublished) (quoting <u>Kimbrough</u>, 552 U.S. at 109). The Fourth Circuit then affirmed her convictions but vacated Petitioner's sentence and remanded for this Court to resentence with the benefit of the <u>Kimbrough</u> opinion. On remand, the Court sentenced Petitioner to concurrent terms of 188-months' imprisonment on Counts One, Three and Twenty-Seven with all other provisions of her judgment to remain the same. Petitioner did not appeal. (5:05-CR-00009, Doc. No. 1272: Amended Judgment).

This federal habeas proceeding follows. In her supplemental § 2255 motion to vacate, Petitioner's raised 26 claims of ineffective assistance of either trial or appellate counsel, two claims that her due process rights were violated, and three claims of prosecutorial misconduct. (5:11-CV-00068, Doc No. 3). Petitioner later filed a motion to amend and sought to reduce the number of issues down to two which involved several claims of ineffective assistance of counsel and a claim that her rights under the Confrontation Clause were violated at trial. (<u>Id.</u>, Doc. No. 10). The Court ordered the Government to respond to the two issues that Petitioner presented and the Government has filed its response and a motion for summary judgment to which Petitioner has filed a response. The contentions of the parties will be addressed in turn below as will Petitioner's motion to amend her § 2255 petition to add an additional claim for relief.

II.     STANDARD OF REVIEW

A.     <u>Section 2255 Proceedings</u>

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any

5

relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

B.     Summary Judgment

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (applying summary judgment to motion to vacate). Any permissible inferences which are drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, when the record taken as a whole could not lead a trier of fact to find for the non-moving party, granting summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

III.     DISCUSSION

A.     Ineffective Assistance of Counsel

The Sixth Amendment of the United States Constitution provides that all defendants charged with a crime have the right to assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial to the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-

6

conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

1.    Erroneous Plea Advice

Petitioner first argues that her counsel was deficient when he informed her that he could impeach witness testimony at trial and thereby create reasonable doubt in the minds of the jurors. (5:11-CV-0068, Doc. No. 10 at 14). This is hardly ineffective assistance as it is a correct statement of the law so long as it was not a promise of a favorable result, which the Court finds that it was clearly not. See, e.g., Rule 607 (Who May Impeach a Witness) and Rule 608 (A Witness's Character for Truthfulness or Untruthfulness) of the Federal Rules of Evidence. Petitioner continues by arguing that her counsel failed to inform her of the strength of the Government's case, and the amount of time she could face if convicted at trial. Had he done so,

7

Petitioner contends, then she would have considered entering into a plea agreement to resolve the charges.

Petitioner's claim here raises two questions: (1) Did her counsel discuss the possibility of entering into a plea agreement at all, and (2) if so, whether he sufficiently communicated with Petitioner regarding the terms of the plea agreement and its resulting consequences if she chose to reject the offer and proceed to trial. The Government attached an affidavit from her trial counsel, James E. Quander, to its response. In this affidavit, Mr. Quander refutes many of Petitioner's allegations, particularly those that contend she was not informed and counseled regarding a possible plea agreement, or that she could plead guilty and try to cooperate with law enforcement in an effort to reduce her sentence. Mr. Quander notes that he clearly explained that the evidence the Government planned to present at trial was strong and that she faced serious punishment if she was convicted. (Id., Doc. No. 15-1: Quander Aff.). The Court found that as Petitioner's contentions were fatally at odds with those of her trial counsel, an evidentiary hearing would be scheduled and would be limited to the issue of whether she received ineffective assistance of counsel regarding the discussion of a possible plea agreement, and that but for this alleged error, Petitioner would have chosen to plead guilty rather than face a trial. (Id., Doc. No. 22).

a.     Evidentiary Hearing

Petitioner was appointed counsel pursuant to Rule 8(c) of the Rules Governing Section 2255 Proceedings, and the evidentiary hearing was held on September 2, 2014, where Petitioner presented sworn testimony via a videoconference from HAZELTON US Penitentiary – SFF, in Bruceton Mills, WV, per the parties' stipulation. Mr. Quander also presented testimony in open

court and the undersigned had the opportunity to observe the demeanor and assess the credibility of each witness and to examine the documents that were received into evidence that were introduced by Petitioner's attorney. The evidence presented during the hearing does not bode well for Petitioner's claim regarding the failed, or the very absence of plea negotiations. Petitioner was first examined by her counsel who was present in court for the hearing and her testimony is summarized below.

(i)      Shonika Eckles Testimony

After the grand jury returned the first indictment, the magistrate judge appointed attorney C. Jennifer Coble on February 22, 2005. The grand jury later returned the second superseding indictment and in a letter admitted into evidence by stipulation which was dated August 26, 2005, Ms. Coble summarized the terms of the written plea offer that had been extended by the Government. The plea offer provided that in return for her guilty plea to the Count One drug conspiracy, she would receive a three-level reduction for acceptance of responsibility and would face a guideline range of 168 to 210 months' imprisonment. The letter informed her of the drug quantities which was 1.5 kilograms or more of crack cocaine, 5 kilograms or more of cocaine and 1000 kilograms or more of marijuana. Petitioner was also informed that if she decided to cooperate with the Government, should could receive the benefit of a motion for a downward departure below her mandatory minimum for the § 846 drug conspiracy offense. During a meeting with Ms. Coble, Petitioner evidenced her understanding of the terms of the offer by placing her initials below each relevant paragraph in the letter. Petitioner likewise initialed that she understood that based on the drug quantities charged in Counts One and Twenty-Seven, if she declined the Government's plea offer, and proceeded to trial that she would face a guideline

9

range of 235 to 293 months in prison based on a base offense level of 38. <u>See</u> (5:05-CR-00009, Doc. No. 1619-1: Defendant's Exh. 1). A copy of the proposed plea agreement was admitted into evidence during the hearing and Petitioner testified that she had never seen the document although she did aver that she had seen the August 26th letter which summarized the critical terms of the plea agreement and that she had in fact initialed the letter evidencing her understanding of the proposed terms. (<u>Id.</u>, Doc. No. 2: Plea Agreement).

Ms. Coble was later allowed to withdraw after Petitioner decided that she wanted to go to trial and Ms. Coble stated that she did not have the necessary trial experience. Ms. Coble provided Petitioner with several referrals, including Mr. Quander, and Petitioner met with him on August 30, 2005. Petitioner testified that she met with Mr. Quander three or more times prior to trial but he never showed her a copy of the plea agreement or discussed its contents nor did he discuss how relevant conduct could affect her guideline range and he informed her that she was not eligible for a "safety valve" reduction as provided for in 18 U.S.C. § 3553(f), which could have reduced her sentence below the statutory mandatory minimum of no less than 10 years nor more than life imprisonment. Petitioner also testified that he failed to explain how her sentence would be calculated or how the quantity of drugs would be established and Petitioner denied that he ever discussed any possible defenses other than to impeach the Government's witnesses.

On the eve of trial, Mr. Quander told Petitioner that she could still pursue a plea agreement but that she would no longer be eligible for a reduction in sentence based on acceptance of responsibility. Petitioner proceeded to trial although she stated that if she had been apprised of how her sentenced would be determined she would have considered the plea agreement. Petitioner testified that she provided the names of witnesses that she wished to

present at trial which included her pastor and her uncle William Eckles. However, Mr. Quander declined to present the witnesses after speaking with them and concluding that they could not help Petitioner's defense.

Petitioner provided additional testimony about the resentencing hearing which took place following remand from the Fourth Circuit. She again stated that she believed she might be eligible for the safety valve reduction but Mr. Quander declined to ask the Court for the reduction because she chose to go to trial and it would impair his credibility.

On cross-examination, Petitioner confirmed that she had reviewed the terms of the Government's plea offer which were memorialized in the August 26th letter and that she had initialed under each of the terms on the letter. Petitioner explained that she met with Ms. Coble two or three times and decided to find another attorney after Ms. Coble explained the terms of the plea offer. Petitioner expressed that she wanted to contest the charges at trial and Ms. Coble explained that she had no trial experience and provided referrals to other attorneys, including Mr. Quander who was retained a short time later. In closing the cross-examination, Petitioner admitted that she was guilty of dealing drugs and she averred that she did not initially admit her culpability in the drug conspiracy.

(ii)     James Quander Testimony

Mr. Quander was called as a witness by the Government. On direct examination, Mr. Quander provided testimony about his nearly 16-years of experience as a criminal trial attorney and stated that he had tried roughly 75 jury trials. Mr. Quander explained that he first met with Petitioner on August 30, 2005 at his office, four days after Petitioner initialed the August 26th letter which was prepared by Ms. Coble. He testified that Ms. Coble related to him that Petitioner

11

was adamant about going to trial and Ms. Coble did not feel comfortable representing her in that capacity because of her lack of trial experience. During this initial meeting, Mr. Quander testified that Petitioner brought a copy of the August 26th letter and, contrary to Petitioner's assertions, a copy of the proposed plea agreement. In addition, Mr. Quander identified the August 26th letter and a copy of the plea agreement in open court and averred that they were copies of the documents that Petitioner produced for the August 30th meeting, and that he reviewed the contents of each of the documents with Petitioner during the meeting. In addition, Mr. Quander testified that he reviewed the sentencing guidelines in order to explain to Petitioner how the base offense level of 38, which was contained in both the August 26th letter and the proposed plea agreement, was calculated and what the possible punishment would be. Further discussions turned on the issue of what her guideline range would be if she pleaded guilty and was able to gain credit for acceptance responsibility – 168 to 210 months compared with 235 to 293 months if she was convicted at trial – and they discussed how her relevant conduct could affect her sentence under the guidelines and how the court would make this determination.

The Government asked Mr. Quander to identify a copy of handwritten notes that were taken at the August 30th meeting by him as he spoke with Petitioner. See (5:05-CR-00009, Doc. No. 1619-4, Defendant's Exh. 4). The notes provide details about other co-defendants involved in the drug conspiracy and their length of involvement and included details regarding specific drug amounts and it reiterates information from the August 26th letter and the plea agreement. Mr. Quander testified that he had several discussions with Petitioner about whether or not to plead guilty and they discussed the high drug quantities that were identified in the discovery and the fact that there were a number of co-conspirators that were prepared to testify against

Petitioner. In sum, Mr. Quander testified that he informed Petitioner that her chances of prevailing at trial were not good based on the overwhelming evidence that he had observed when reviewing the discovery provided by the Government. Mr. Quander testified that Petitioner continued to insist on going to trial, citing as one example a conversation that she had with her minister wherein the minister related that she had dreamed that Petitioner should contest the charges at trial. The testimony continued as Mr. Quander summarized the conversations he had with Petitioner regarding the possible effect of her choosing to cooperate with the Government which included a possible motion for a downward departure that could have reduced her sentence below the 10-year mandatory minimum, but she still insisted on going to trial.

Based on the foregoing, the Court finds that Mr. Quander was a credible witness and he provided relevant and reliable evidence that differs markedly from Petitioner's version of the events regarding plea negotiations – in particular, the testimony and documentary evidence related to the August 26th and August 30th plea discussions for which Petitioner acknowledges she was present. Her testimony demonstrates that she was apprised of the essential terms of the plea agreement, including the potential penalties that were involved if she chose to forego entering into the agreement and to proceed to trial.

The evidence shows that she deliberately rejected the plea agreement and parted ways with Ms. Coble because the latter did not have the necessary trial experience, and in demonstrating her willingness to contest the charges, Petitioner received referrals from Ms. Coble and met with Mr. Quander four days later. The Court is persuaded by Mr. Quander's testimony that he did discuss the essential terms of the plea agreement, the consequences of choosing to forego acceptance of responsibility, and the potential guideline ranges of punishment

if she was convicted at trial. The Court finds that after considering all of the evidence presented, that Petitioner has failed to present credible evidence that she did not understand, or was not apprised of the important aspects of the plea agreement, and the evidence demonstrates that she knowingly and voluntarily refused the plea offer. Additionally, the Court finds that Petitioner was clearly informed by counsel about the great weight of the evidence that would be presented against her at trial from co-defendants regarding her role in the drug conspiracy and that her decision to submit herself to the risk of a trial was a knowing and voluntary choice. The Court further finds that Petitioner was not promised any particular result by counsel if she decided to go to trial. Based on these findings of fact, the Court concludes that Petitioner's first claim for relief is without merit and it will be denied.

2.     Admission of Guilt during the Opening Statement

Petitioner argues here that her counsel admitted her guilt when he addressed the jury during his opening statement. (5:11-CV-00068, Doc. No. 10 at 18). Specifically, she challenges statements regarding her relationship with a cooperating Government witness, Milton Gaines, who was a convicted drug offender. Counsel noted in his opening statement that Petitioner and Gaines lived together and that Gaines both stored drugs and sold them out of their house during the course of the conspiracy.

Trial counsel's opening statement was merely a measured acknowledgement of the strength and inevitable presentation of the Government's evidence and these statements were likely offered to water down Gaines's testimony and present an early attack on his credibility. As counsel clearly explained, Gaines had been arrested on federal drug charges and based on his prior record, he could face a mandatory term of life imprisonment if he failed to provide

significant cooperation to Det. Ramsey, an investigator with the Iredell County Sheriff's Department, who was the lead case agent in this case. As counsel explained: "[Gaines] found out in meeting with Agent Ramsey [that cooperating] was the only way he was going to avoid going to prison for life was to set folks up. And you'll hear from him: 'If I go down, other people are going to go down.' And the first person and the easiest person for him to pull down was the woman he was living with, that he had a good relationship with. And you're going to hear all this today and throughout the week from various witnesses." (5:05-CR-00009, Doc. No. 810: Trial Tr. at 8-9).

Far from damaging to Petitioner, the Court finds that this was simply a forecast of the evidence that the Government would present at trial and early opportunity to attack the credibility and motivation of Gaines in agreeing to cooperate with the Government. Petitioner has failed to demonstrate that she suffered any prejudice under <u>Strickland</u>, particularly in light of the numerous witnesses that testified to her active involvement in the conspiracy. This argument will be rejected.

### 3. Counsel failed to call available witnesses

Next, Petitioner argues that her counsel was ineffective because he did not call character witnesses who could have testified to her honest, peaceful and "law-abiding lifestyle." (5:11-CV-00068, Doc. No. 10 at 21-22).

During the evidentiary hearing and in his affidavit, counsel testified that he had interviewed potential character witnesses and other fact witnesses suggested by Petitioner to determine if they could provide testimony that could be helpful to her defense, but he declined to present their testimony because he did not believe it would be of assistance at trial and could in

fact hurt her case.

Petitioner also argues that counsel should have presented William Eckles as a witness because he could have provided exculpatory evidence that she was not involved in a drug conspiracy with him from 1999 to 2005. (Id., Doc. No. 10 at 22-23). In the first place, as the Government notes, although many of the Eckles family members were also involved with Petitioner in the drug conspiracy, William Eckles was not one of them. Second, Petitioner contends William Eckles' testimony could have fostered reasonable doubt in the jurors. This contention is simply not plausible in light of the great weight of the evidence presented.

As is well-established, trial counsel is given a wide berth in governing his or her trial strategy under the exacting Strickland standard. "[W]e 'must indulge a strong presumption . . . that, under the circumstances, the challenged action might be considered sound trial strategy.'" United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (quoting Strickland, 466 U.S. at 689) (internal quotations marks omitted). "The difficulty of overcoming that general presumption is even greater in this case, given that 'the decision whether to call a defense witness is a strategic decision' demanding an assessment and balancing of perceived benefits against perceived risks, and one to which '[w]e must afford . . . enormous deference. Id. (quoting United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994) (internal quotation marks omitted).

The Court has examined the record in this matter and finds that Petitioner has failed to meet her burden of demonstrating any right to relief on this claim.

    4.    Failure to object at trial

Petitioner presents a host of conclusory grounds in contending that her counsel failed to "Object with proper grounds." (5:11-CV-00068, Doc. No. 10 at 24). Petitioner cites to 18 alleged

16

errors in the trial transcript from her four-day trial, but other than simply providing a general summary of some proper grounds for objection at a hypothetical trial, Petitioner fails to provide any details regarding what objections should have been made, or why these objections, if offered, could have assisted in her defense. It appears that Petitioner is merely providing an overview of a trial counsel's general duty in lodging objections but this fails to draw any specific attention to any errors in her case, and how the alleged errors may have changed the outcome of her trial.

Next, Petitioner argues that she is entitled to relief because her counsel failed to object to what she contends were improper, leading questions from the Government. (<u>Id.</u> at 26). Rule 611 of the Federal Rules of Evidence provides, in pertinent part, that the trial court is charged with exercising reasonable control over the examination of witnesses, and provides the admonition that "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony." Fed. R. Evid. 611(c). Petitioner challenges certain testimony elicited by the Government and argues that the prosecutor improperly led its own witnesses "in supplying false testimony to the jury about what, if any, involvement they had with [Petitioner] in the alleged conspiracy." Petitioner continues by charging that the "direct examination of the government's witnesses was not performed by an attorney seeking the truth but rather by an attorney who was supplying a false memory for the witness to aid the jury in forming a prejudicial/biased verdict based on false information." (5:11-CV-0009, Doc. No. 10 at 26).

This claim will be denied for three reasons. First because Petitioner's claims here challenge the integrity of the prosecutor through the introduction of baseless and potentially libelous accusations. Second, Petitioner's present attack on the evidence presented appears at

great odds with the continued admissions of her guilt after her trial. Finally, Petitioner's argument again fails to present any potential right to relief under Strickland. The questions she identifies in the transcript present examples of questions that could be described as leading but they are still merely questions that moved the trial forward by developing testimony, and some questions she identifies are plainly non-leading and produce answers that point to evidence of Petitioner's guilt. For the reasons stated, this claim for relief will be denied.

5.      Sentencing errors

In her final claim of ineffective assistance of counsel, Petitioner asserts that her trial counsel was ineffective during both her original 2007 sentencing and during her 2009 resentencing hearing on remand.

Petitioner first maintains that counsel was ineffective in failing to present evidence of her "extraordinary post-offense rehabilitation as a factor under 18 U.S.C. § 3553(a)." (5:11-CV-00068, Doc. No. 10 at 29). Petitioner highlights certain actions following her arrest on the drug conspiracy charge on February 22, 2005. After she was released on bond, Petitioner states that she "quit her life of partying, drinking, and using and selling drugs" and that she fought to regain custody of her five-year old daughter and secured employment. Petitioner maintains that she remained drug and alcohol-free from the day of her arrest, and through trial and sentencing. (Id. at 30). The principal complaint offered is that her counsel failed to draw sufficient attention to her post-arrest conduct by neglecting to bring it to the Court's attention through argument or through presentation of testimony of witnesses that she requested be called for that purpose. (Id.). The result of this omission, as Petitioner asserts, is that the Court never considered the changes she made in her life in support of mitigating her sentence. This argument is belied by the

18

record.

Petitioner's counsel filed a sentencing memorandum in advance of her resentencing hearing and called special attention to her activities since being incarcerated which were highlighted as follows:

> Since being incarcerated, the Defendant has taken exceptional strides toward rectifying her past criminal activity. She has become an extremely active inmate while in the Bureau of Prisons. She has exhibited leadership qualities and has assisted numerous inmates in many facets of prison life. More importantly, she has completed numerous life skills and drug treatment courses. She has also completed several vocational courses ranging from computer program classes to landscaping classes. Several certificates and letters of support will be presented to the Court during the hearing.

(5:05-CR-00009, Doc. No. 1270: Sealed Sentencing Memorandum at 2-3).

Counsel reiterated the substance of this argument at resentencing and emphasized that she had maintained a strong relationship with her family, particularly her daughter with whom she was able to have regular visits. Additionally, counsel submitted a packet of information to the Court which contained letters of support, certificates Petitioner had earned through completion of parenting classes, mental health and vocational training, and through her participation in educational classes. (Id., Doc. No. 1547 at 16-21). And in fashioning a sentencing the Court placed clear emphasis on the many number of ways that she had worked to rehabilitate herself by noting the over 15 courses she had taken, and found that she had exhibited remorse and had been a good mother and worked to continue her parental role. For these reasons stated, it is clear that her counsel presented strong evidence in favor of mitigation and this claim will be denied.

Petitioner also claims that her counsel was deficient in failing to challenge the use of her 1996 conviction for simple assault for which she was assessed one criminal history point during her 2007 sentencing. The Court finds that Petitioner's claim is moot despite any failure to object

19

to this conviction. The Court awarded one criminal history point for the 1996 conviction for simple assault and one point for the 2000 conviction for possession of marijuana which placed her in a Level II criminal history category. This, along with her total offense level of 38 yielded a guideline range of 262 to 327 months. The Court sentenced at the bottom of the guideline range and Petitioner appealed her convictions and sentence. As discussed previously, Petitioner's convictions were upheld but her sentence was vacated and remanded for reconsideration based on the Supreme Court's Kimbrough decision. At the commencement of the resentencing hearing, the Government addressed the issue of the 1996 simple assault conviction and agreed that she should not have been assessed a criminal history point for that offense and should have qualified for a Level I criminal history category and a guideline range of 188 to 235 months. (5:09-CR-00009, Doc. No. 1547: Resentencing Tr. at 3). Based on the foregoing, Petitioner cannot demonstrate she is entitled to relief under Strickland because her original sentence was vacated and the addition of the one point in 2007, even though arguably erroneous, had no ultimate impact on the duration of her incarceration pending resentencing and it was stricken from her criminal history prior to resentencing and therefore had no impact on her new sentence.

Finally, Petitioner challenges her counsel's refusal to pursue the safety valve reduction on resentencing. (5:11-CV-00068, Doc. No. 10 at 32). Petitioner herself raised this claim during resentencing and the Court explained that it would not apply to her case because she had not provided a forthcoming statement regarding her criminal conduct. (5:05-CR-00009, Doc. No. 1547 at 22). The Government responded as well by noting that evidence was presented during the resentencing hearing from Det. Ramsey that Petitioner had been observed with a firearm in her purse during her participation in the drug conspiracy. The Government also observed that

Petitioner had not provided the information that is required by § 3553(f)(5) prior to sentencing, namely all of the information related to her role in the conspiracy and other drug offenses. Petitioner's counsel then addressed the Court and argued that the application of the safety valve should be considered despite the evidence of the firearm or lack of presentence statement. (Id. at 22-23). In sum, Petitioner's counsel did urge for application of the safety valve reduction but the Court declined to find it applicable to Petitioner's case.

B.     Confrontation Clause

Petitioner argues that the admission of laboratory reports at trial without first requiring the laboratory analyst to testify to the findings in the report, violated her right to confront the analyst under the Sixth Amendment to the U.S. Constitution.

Prior to trial, the Government filed a proposed stipulation regarding the admissibility of certain laboratory reports. (Id., Doc. No. 505). The first report was from an analyst from the North Carolina State Bureau of Investigation (SBI) who examined evidence seized on January 26, 2005, that was the subject of conduct charged in Count Twenty-Seven of the indictment. The report was admitted into evidence by stipulation that was reached prior to its introduction before the jury, and Det. Ramsey testified about the contents of this report and noted that it identified the seized substance as 23 grams of crack cocaine. (Id., Doc. No. 812: Tr. Transcript at 121-22; Government's Exh. 37).

The second laboratory report analyzed suspected controlled substances that were related to the drug deal on September 9, 2004, that was alleged in Count Three of the indictment. The suspected drugs were submitted to the SBI crime lab in Asheville, and the SBI report was also introduced into evidence by stipulation. Sergeant Shuskey of the Iredell County Sheriff's Office

testified regarding the findings of this report which concluded that the seized substance was in fact 27.98 grams of cocaine powder. (Id., Doc. No. 811: Trial Tr. at 155-56).

Petitioner argues that she is entitled to a new trial because the analysts were not subject to cross-examination at trial regarding the contents of their reports. The Court finds that this argument is without merit because the parties' stipulated that the reports could be admitted into evidence and there does not appear to be any substantial question that the reports accurately identified that the substances seized were as described and illegal, controlled substances. Given the strong corroboration of the lab reports by testimony and other supporting evidence, Petitioner does not reasonably call into question the findings of the reports as stipulated.

C.      Motion to Amend

Petitioner seeks to assert a claim for relief based on the Supreme Court's holding in DePierre v. United States, 131 S.Ct. 2225 (2011), in which the Court held that the term "cocaine base," as that term is used in 21 U.S.C. § 841(b)(1), refers not only to crack cocaine, but to any cocaine in its chemically basic form. Id. at 2227-28. Petitioner's argument fails to present a cognizable claim because the holding in DePierre has not been made retroactive to cases on collateral review. See, e.g., Fields v. Warden, FCC Coleman-USP 1, 484 F. App'x 425, 427 (11th Cir. 2012); Yates v. Bledsoe, 501 F. App'x 111, 114-14 (5th Cir. 2012) (finding that DePierre did not "render the crimes . . . noncriminal" and that DePierre is not retroactive). For the foregoing reasons, the Court finds that Petitioner's motion will be denied.

IV.      CONCLUSION

Based on the foregoing, the Court finds that Petitioner's § 2255 motion is without merit and the Government's motion for summary judgment will be granted.

22

**IT IS, THEREFORE, ORDERED** that:

1. The Government's motion for summary judgment is **GRANTED**. (Doc. No. 16).

2. Petitioner's "DePierre Claim Motion" is **DENIED**. (Doc. No. 14).

3. Petitioner's § 2255 motion, as amended, is **DENIED** and **DISMISSED**.

4. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk is directed to close this civil case.

**IT IS SO ORDERED.**

Signed: September 29, 2014

Richard L. Voorhees
United States District Judge

23